■ SUMMIT SOLOMON & FELDESMAN, Appellant, v AARON MATALON et al., Respondents. [627 NYS2d 690] —Order, Supreme Court, New York County (Leland DeGrasse, J.), entered January 26, 1995, which, to the extent appealed from, denied plaintiff's motion for summary judgment against the individual defendants Aaron Matalon and Shaul Natan and for an order dismissing defendant New York Brasserie, Ltd.'s legal malpractice counterclaim, granted the cross-motion to dismiss the complaint against the individual defendants Matalon and Natan, and stayed enforcement of the judgment against defendant Brasserie pending determination of said defendant's counterclaim, unanimously reversed, on the law, with costs and disbursements, plaintiffs' motion for summary judgment against the individual defendants granted, the counterclaim for legal malpractice dismissed, the cross-motion denied and the stay of enforcement of judgment in favor of plaintiffs against Brasserie vacated.

This is an action against a corporation and its two individual shareholders to recover $69,000 in legal fees earned during the course of preparing a shareholders' agreement, negotiating a lease and representing the corporation in the defense of a lawsuit. The retention, in 1992, was oral. On January 8, 1993, plaintiff, a law firm, and Brasserie, a corporation, and the two individual defendants, Brasserie's only shareholders, Matalon, its president, and Natan, each executed a letter agreement, which, in relevant part, stated: "This letter will confirm our agreement pursuant to which you are engaging us to represent and perform legal services on your behalf in connection with the litigation pending with the Board of Managers of Frost House Condominium et al." Matalon signed on behalf of Brasserie as its president and he and Natan each signed in their individual capacities on separate lines above their respective names. On March 16, 1993 plaintiff sent a detailed statement, addressed to all three defendants, for legal services rendered during the period November 1992 through March 7, 1993. At no time after receipt of this invoice did either individual defendant protest their personal liability. Nor did Matalon and Natan do so during a two-day hearing, at which both were present and participated, to fix the amount of plaintiff's fee after

plaintiff was permitted to withdraw as counsel for Brasserie in the Frost House litigation. No issue was raised at that time as to the quality of plaintiff's services. The only argument raised was the excessiveness of the charge. The court fixed the value of plaintiff's combined services at $95,000 and, on Brasserie's motion, reduced the valuation to $69,000. Nowhere, either at the hearing or in their motion papers to reduce, did defendants raise even the spectre of malpractice.

The IAS Court erred in denying plaintiff's motion for summary judgment against the individual defendants and in dismissing the complaint against those defendants. It justified its determination on the grounds that the individual defendants were not parties to the Frost House litigation and thus were not the beneficiaries of plaintiff's services and that the nonlitigation services were performed on behalf of Brasserie only. This was error. The individual defendants never denied that they, with Brasserie, orally retained plaintiff to render the services which are the subject of this lawsuit. Nor did they dispute signing the January 8, 1993 letter confirming the earlier retention. Having contractually bound themselves, it is no answer to say, as did the IAS Court, that the individual defendants derived no benefit from plaintiff's services. A corporation's principal, like any other promisor, is liable to the promisee on a contract entered into by the principal for the benefit of the corporation. Nor will Natan's claim that before signing the letter agreement he was told "don't worry, just sign it" relieve him of liability. Notably, he does not disavow the earlier oral retention in 1992 nor, in any event, does he assert that he signed the letter agreement in reasonable reliance on that comment. Matalon does not even raise that issue. Since the individual defendants have failed to raise a defense to the claim for attorneys' fees, plaintiff should have been awarded summary judgment.

The hearing and determination fixing the value of plaintiff's professional services in the retaining lien proceeding necessarily decided that there was no legal malpractice, and the interposition of such a claim in this subsequently commenced action is barred by the doctrine of res judicata (*Altamore v Friedman*, 193 AD2d 240, 246, *lv dismissed* 83 NY2d 906; *Grace & Co. v Tunstead, Schechter & Torre*, 186 AD2d 15, 20). Additionally, there was no evidence submitted in opposition to plaintiff's motion for summary judgment to support the viability of such claim.

Finally, with the dismissal of the malpractice counterclaim, there is no justification for the stay of enforcement of judg-

ment. Concur—Murphy, P. J., Sullivan, Rubin, Asch and Williams, JJ.